Merhav Ampal Group vs. Merhav Ltd. Thank you. Good morning, Your Honor. My name is Daniel Fleeman. I represent the appellants Yosef Maiman and Merhav MNF Ltd. Congress has conferred on federal courts subject matter jurisdiction over all civil proceedings that are related to cases under the Bankruptcy Code. In 1992, in the Cuyahoga case, this court held that related to jurisdiction exists where the outcome of the action might have a conceivable effect on the bankruptcy of state. A few years later, in the Celotex case, the Supreme Court noted that related to jurisdiction cannot be limitless. The issue before this court is whether related to subject matter jurisdiction should extend to state law collection actions brought by a non-debtor against a non-debtor where the plaintiff owes money to an entity that is in bankruptcy. Or said another way, do such proceedings have a conceivable effect on the bankruptcy of state because a plaintiff, if it prevails, might repay the bankrupt entity and might use litigation proceeds to do so? We believe that the answer is no, and that related to jurisdiction should not extend to a non-debtor vs. non-debtor collection action where the asserted nexus to the estate is that the plaintiff owes money to the bankrupt entity. And that is for two reasons. First, the connection between the estate and the litigation is too remote and too speculative given that there is an intervening decision and there are intervening actions by the plaintiff standing between the recoveries and the bankruptcy of state. And the second reason is that such a holding would expand related to jurisdiction so as to be limitless. As to our first point about the connection being too limited... The argument of the other side, and I would like you to address it, is that if MAG prevails in this proceeding, a significant amount of money would be available to make a payment on the capital notes to AMPA. And they're saying that it would be at least 16%, $1.6 million. How do you respond to that argument? Your Honor, I think the key to that question was the term available. And we believe that the fact that a plaintiff may be able to recover and funds may be available to repay the debtor is not a sufficient connection between the lawsuit itself and the bankruptcy of state. But the declaration doesn't say may be available, it says will be available. You said the standard previously was might pay down some debt of the debtor. But it's more than that in the Kelsey Declaration. Isn't it specific enough to say it will be available? And it goes through the calculation of how much money will be left over after all the other debts are exhausted. Yes, Your Honor. And that is Judge Rakoff at district level. It's the same analysis that he used was to ultimately conclude the funds will be available and might be paid to the debtor. Our view is that the factual predicate, the factual analysis is irrelevant. We believe that there should be a rule that a conceivable effect on the bankruptcy of state never exists where the debtor of a debtor claims that proceeds will be used to repay the bankrupt of state. We think that . . . You raised this issue. You didn't raise this issue in your pleadings. The district, the judge raised it sui spani. Is my recollection correct? That's correct, Your Honor. We, in fact, removed the proceeding. We did remove it to federal court. Upon getting to bankruptcy court, Judge Bernstein asked all the parties to brief subject matter jurisdiction. And at that point, we received . . . At that point, you changed your mind. At that point, we realized we were incorrect in removing, Your Honor. And I think that brings us back to the issue of remoteness. And I think there's two cases that come up through the district court that we think are very relevant to this point. In the Allstate case and in the Sealing case, one by Judge Buchwald, one by Judge Swain, the fact pattern was the following. The defendant had removed alleging that the defendant had an indemnity claim against a bankrupt entity. In both those situations, the defendant had not yet filed a claim in the bankruptcy case and actually was precluded time-wise from doing so. And so, the argument by the defendant was that there was a nexus to the bankruptcy case because it could seek leave of court to file a late filed claim. In both those cases, the judge at the district level said that is one too many levels removed. That the nexus between the litigation and the bankruptcy estate was not connected sufficiently because of that intervening step, that intervening uncertainty of whether there would be leave to file a late filed claim. And we think that is very similar to the case here. And similar to any situation where a debtor of a debtor claims that they might use proceeds in order to repay the debtor. There's an indirect subsidiary relationship, is your argument here, that it's not a direct subsidiary of the debtor but that's once removed? Is that what you're arguing is the key fact or is it more factual than that? From our perspective, the fact that it is a subsidiary is irrelevant because it is, by admission from the plaintiff, it is an insolvent entity. And so, it is essentially just an entity that owes money on an intercompany obligation to a debtor. No different, your honor, than if a hospital, for example, filed for bankruptcy. And let's say there were thousands of patients that owed outstanding bills to the hospital. All of those patients would be debtors of debtors. And if any of those patients brought state law collection actions against a landlord on a security deposit, somebody that didn't clean their walkway and they slipped and fell, all those actions seeking to collect money under Judge Rakoff's holding would fall under related to jurisdiction. Because all those lawsuits would be seeking to collect proceeds that could theoretically be used to repay the bill to the hospital debtor. We think that that introduces a very, very broad scope of cases. It brings them into the jurisdiction of the bankruptcy court. And I think on that point, it's actually- Judge Persi has since become clear that the parent subsidiary relationship does not provide a jurisdictional basis to decide this adversary proceeding. He looked to the facts and he looked to the Kelsey Declaration to see if there was a factual basis for a more direct relationship. Isn't that right? That is correct. And I think where Judge Bernstein's quote actually I think is very relevant. He begins by saying that a plaintiff may pay other debts, may keep the money, and therefore these links are too remote. And if that were not, the bankruptcy courts related to jurisdiction over third party disputes would be virtually limitless. However, Judge Bernstein went on to make a factual finding that he believed that it was more likely in this circumstance that the trustee would use his control over MAG to cause a payment to be made to the debtor. From our perspective, no factual analysis should have been made. We think that where the case law should stop is to say that there would never be a conceivable effect on a bankruptcy estate just based on the fact that the plaintiff owes money to a debtor. That that will never be sufficient under any set of facts. And this is why that's important. Engaging in a factual analysis invites the opportunity for litigants to manufacture jurisdiction if they so choose. A plaintiff that wants to be in federal court will naturally say, I will use the proceeds to pay the debtor. Likewise, a plaintiff that wants to get remanded back to the state court will say, I will never use the proceeds to repay the debtor. Engaging in a factual analysis in this matter really invites, imposes a huge burden of federal courts who need to scrutinize and speculate about people's intentions in cases brought in front of them. I've reserved for rebuttal. Thank you, Your Honors. Thank you. Good morning, Your Honors. May it please the court, John Campo of Ackerman LLP on behalf of Merhav Ampel Group, the appellee and the judgment creditor below in connection with this $28.5 million judgment. Your Honors, I think it's fair to say that you seem to understand fully the issue that is here. And that is, is that this is not a speculative stretch to find jurisdiction. It was an analysis done by Judge Bernstein based on the record before him, which was the Kelsey affidavit. And as Justice Droney correctly points out, he analyzed that and he came to the conclusion that there would be money available for the Ampel estate. There is no question. If the lawsuit succeeded. Well, the lawsuit, that is absolutely correct. And the lawsuit has succeeded. I mean, we do have a $28.5 million judgment against them. This is not a speculative litigation. And the cases that counsel refers to, the Allstate case, those cases, the nexus was very far removed. There were issues regarding whether or not there's an indemnity claim and there's an issue regarding whether or not the money would ever come into the debtor's estate. There is no issue here. Ampel and its other subsidiaries are owed approximately $262 million from MAG. MAG will, with $28 million of proceeds if it collects it, pay its legitimate tax claims of about $8.5 million, its third party claims. And there'll still be in excess of $10 million available for the distribution to Ampel and the other Ampel subsidiaries. The issue of, and what counsel tries to make a point of, is they suggest that because Judge Bernstein said, well, the trust, MAG could always cause all the money to go into Ampel. But that's irrelevant. The point is that there's money there for Ampel if the MAG money is distributed prorata to the Ampel creditor claims that are against MAG. What about the argument that it's easy to come up with something like Kelsey's declaration, a six-paragraph declaration that says, of course we're going to use this money to pay off that debt. Why couldn't anybody do that? Well, first off, Your Honor, it's a fact. MAG is going to use that money, would use that money to pay off that debt. That money is in MAG, and that money will flow to Ampel. And the fact of the matter here is that the trustee of Ampel happens to be the person who's in charge of MAG and running that litigation, and certainly is going to want that money to flow into Ampel. This is not a created situation. This is a fact. If Ampel, if MAG owes $8.5 million of tax claims and $2 million of third-party claims, there's going to be excess money here for the claims on the capital notes, of which Ampel holds directly, the debtor has a capital note of $61.9 million. So even if you just spread it out among all the subsidiaries, there's still going to be at least a $1.6 million distribution into the debtor's estate. And that's what the cases look at. That is what Cuyahoga says. That's what the litany of cases following Cuyahoga. And that is the issue that courts look at when they say, is it? Do we have subject matter jurisdiction or do we not? Is this nexus real? Is it too speculative? I mean, if you read the analysis, and I know you have, you read Judge Bernstein's decision, this is not a speculative nexus. And as Judge Rakoff pointed out in his judgment, in his opinion, he said this is not It's beyond conceivable effect. There's almost a certainty that there will be a distribution to the Ampel estate. So the arguments that there's no subject matter jurisdiction here simply don't hold. This is where we are. This is the law. And, Your Honor, you correctly point out that the appellant sought the jurisdiction at the time when it was convenient because they wanted to delay what was in the state court, which was a motion for summary judgment in lieu of complaint. We got to the federal court because we agreed there was a nexus and there was subject matter jurisdiction. And, of course, you can't confer it. But, I mean, the judgment debtors certainly thought it was there. They now say, well, because it's insolvent, there's no nexus because the equity isn't worth anything. But it's not the equity. It's the claim. It's the claim is where we have the right here. Ampel is owed money from MAG. This money, if it gets into the MAG estate, into MAG, will be used to pay distributions in the Ampel estate. This is beyond just speculation. It's beyond — it's a very conceivable and, again, as Judge Rakoff said, an almost certainty that this will have an impact on the estate and affect the administration. I really don't have anything else to say, Your Honors. If you have any questions, I'm here to answer. Thank you very much. Thank you. You reserved some time. You reserved some time. Two minutes, I believe. I do. Thank you, Your Honor. Your Honors, the Appellee's perspective — What's the status of the $28 million judgment? The judgment remains in place as of now and has not been paid, Your Honor. Has it been bonded? It has not been bonded. Does your client have the resources to pay the judgment? It does not presently have the resources, Your Honor. The plaintiff is undertaking some collection actions. But as we've had discussions with plaintiffs, right now there's nowhere at all to pay that. I see. Thank you. Your Honors, I think the approach that the appellee would have this court adopt invites or actually necessitates an analysis by a federal court every time that this type of case comes before it in order to guess essentially what it is that the plaintiff will or will not do with proceeds should they be recovered. We believe that if you look at what Judge Bernstein did here — Are you asking us to basically overrule this Cuyahoga case that sets up the conceivable basis standard? I don't believe so, Your Honor. What we're asking for is a clarification, in essence, that the conceivable effect needs to be more closely related in these situations. And adhering to self- Factually? Across the board in all these situations, it needs to be more connected than debt. Does that mean you can inquire into the facts or it just has to be a structural relationship? Is that the fact that the plaintiff owes money to a debtor will never be sufficient to satisfy the conceivable effect because it is too removed, it is too remote between — there's too much of a remote connection between the bankruptcy estate and the litigation itself. What if the plaintiff commits to paying any recovery to the debtor? Your Honor, I think the danger that that situation poses is it allows parties to manufacture jurisdiction or to negate jurisdiction depending on their strategic motives in connection — Well, manufactured jurisdiction is something that those opposing jurisdiction complain about. I mean, either there is jurisdiction or there isn't, and one of the circumstances that might remove the ambiguity would be if the plaintiff committed that it is pursuing this amount of money, and if it recovers, it commits itself to paying X percent, which it would do to the bankruptcy court, which could then deal with that commitment. Why isn't that a situation? I mean, we take commitments all the time in jurisdiction circumstances where people commit to doing things in foreign jurisdictions or not, and that's how we make jurisdictional rulings. So why wouldn't that be enough to remove the uncertainty? Well, Your Honor, we believe that the way to remove the ambiguity and uncertainty is to say that when a plaintiff claims that they will use proceeds in order to pay the debtor, and that is the sole nexus for trying to establish related jurisdiction, that this Court adopt a rule that that will never be sufficient because it is too removed. Well, you say it's too removed, but now there is a commitment that that lawsuit could yield money for the bankruptcy estate, and so I'm trying to understand why you think that's too remote once there's a commitment that this litigation, if successful, will yield money for the bankruptcy estate. It doesn't seem to me to be that different from the bankrupt or the trustee himself going after it in his capacity as trustee. Well, Your Honor, and that is a more typical situation related to jurisdiction where the trustee is seeking to sue a third party in order to recover, and we know that that is not remote because there's an immediate effect on the estate. Those proceeds immediately come to the estate. These situations... But the law is not anything that has an immediate effect on the estate. It's conceivable effect. Yes, Your Honor. The law is also that it should not be limitless, and our concern is that when a plaintiff tries to establish jurisdiction just because it owes money to a debtor, that introduces a wide scope of cases that inevitably end up... When a plaintiff gets up in court, he's represented by counsel, an officer of the court, Your Honor, I represent to you that if we recover on this claim we are seeking authority to bring, the first dollar comes into the estate. We're looking at a million dollars, and the shortfall in the estate is $100,000. Why is that not conceivable? Because, Your Honor, my concern with that would be that just as easily the plaintiff could stand up if he wanted to eliminate federal jurisdiction and say, under no circumstance are we going to pay this debtor. And we're basically placing the analysis on jurisdiction on what strategically the plaintiff wants to do. Well, that's another case. In the hypothetical I gave you, why is that not conceivable? Why is that not a conceivable benefit to the estate? For several reasons, Your Honor. First of all, the plaintiff could change his mind. Second of all, let's take MAG, for example. Let's not make it theoretical. Let's take MAG. As set forth in the record, MAG has a huge amount of other obligations. Well, how could a plaintiff change his mind? I mean, he made a representation to the court. All right. So fair enough, Your Honor. So here MAG has a huge amount of other obligations, and any of those creditors could take collection actions that would inhibit MAG's ability to make decisions of what it does with proceeds, for example. All right. But here that's the problem for you here. They say if it were pari passu, there would still be sixteen percent. That's assuming that it were to make payments . . . Four percent. That's assuming it were to make payments pari passu, and we don't know what it's going to do, Your Honor. Well, there's a court there that takes care of these things, that has the authority to enforce promises and representations. That's what . . . And . . . We see that all the time. That's definitely true, Your Honor. All of us who are district judges, we used to do that pretty much every day. That's right, Your Honor. And my concern is that the requirement on a federal court to, in every single one of these situations, take testimony, get discovery, try to assess the credibility of the statement that is being made by the plaintiff about the intentions in order to use proceeds, introduces a whole other process in these litigations for which there really is no need from our perspective. From our perspective, the right application of the conceivable effect standard is to say that the nexus has to be close. The traditional situation where conceivable effect has been found is where the defendant has an indemnity right against the debtor. And dollar for dollar, every dollar of that judgment will yield a claim against the bankruptcy estate. That is a direct connection. There's no intervening action required by any party. There's no intervening step required. It's a direct use. Let me see if I can parse the back story here. So you want to be back in State Supreme facing a summary judgment in lieu of complaint. Do you have no defenses to that? Well, Your Honor, I mean, from our perspective, that is where I think this would end up, assuming that they were to refile the lawsuit in state court. That's right. We don't want to keep you much past your time, but I just want to make sure I understand your response to one of Judge Parker's questions. You suggested that while we don't know how the plaintiff will pay the money on a recovery, I would think that would support rather than undermine the bankruptcy court being involved in the case, because with the bankrupt estate having a claim to perhaps 16 percent, if other creditors were to try to jump ahead, the bankruptcy court would be the one best able to protect the bankrupt estate's interest in how the money is paid. Am I missing something here? No, Your Honor. I think that's right. I think that's right. I think the proceeding that Your Honor is referring to would be won by the debtor against MAG in order to collect on the intercompany note. That, without a doubt, would have related to jurisdiction. You suggested that there was no need for the lawsuit by the third parties to be involved, and one of the things I thought you said to Judge Parker was we don't know how the successful plaintiff is going to pay its creditors. Well, once that plaintiff has represented to the bankruptcy court that it will pay the bankrupt estate, the bankruptcy judge will take care of the bankrupt estate in a way that perhaps another court wouldn't, and so I'm suggesting to you I think your answer supports the exercise of bankruptcy jurisdiction rather than undermines it, and I'm asking you if your answer points in some other direction. Your Honor, I would agree with you that the bankruptcy judge would be incentivized to maximize value for the bankruptcy estate. I can't disagree with that. My concern is that inviting the opportunity for a plaintiff to indicate what its intentions are also has the opposite fact pattern where a plaintiff wants to avoid the bankruptcy court's reaches because the plaintiff realizes that the bankruptcy judge will inherently force payment and will be looking after the bankruptcy estate, so that plaintiff will say, under no circumstance am I actually going to pay the debtors' estate. I think we understand your argument. Thank you very much. Thank you, Your Honors. We'll take the case under advisement.